# EXHIBIT 5

# AMENDMENT NO. 4

## TO

## COLLABORATION AND LICENSE AGREEMENT

THIS AMENDMENT NO. 4 TO COLLABORATION AND LICENSE AGREEMENT (this "Amendment No. 4") is entered into as of the 5th day of April, 2016 (the "Effective Date"), by and between Incyte Corporation, a Delaware corporation having an office at 1801 Augustine Cut-Off, Wilmington, Delaware ("Incyte"), and Novartis International Pharmaceutical Ltd., a limited company organized under the laws of Bermuda having an office at 131 Front Street, Hamilton, Bermuda HM 12 ("Novartis").

WHEREAS, Incyte and Novartis entered into that certain Collaboration and License Agreement dated as of November 24, 2009 (as amended to date, the "Original Agreement"); and

WHEREAS, Incyte and Novartis wish to amend the Original Agreement pursuant to and in accordance with the terms and conditions of this Amendment No. 4.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## ARTICLE I

## DEFINITIONS

1.1  Definitions.  Capitalized terms used in this Amendment No. 4 but not defined herein shall have the meaning ascribed to them in the Original Agreement.

## ARTICLE II

## AMENDMENTS

2.1  New Definitions.

(a)  The Original Agreement is hereby amended to insert the following new definition into ARTICLE I immediately after Section 1.42:

"1.42a "Graft-Versus-Host Disease Field" means the treatment, control, mitigation, prevention or cure of all graft-versus-host disease Indications as defined in subsections 279.50 through 279.53 of the International Classification of Diseases, Ninth Revision, Clinical Modification (ICD-9-CM) as set forth in Exhibit J to this Agreement. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.

1

██████████████████████

Schedule I attached to this Amendment No. 4 sets forth the terms of the Exhibit J referred to in the preceding amendment.

(b)     The Original Agreement is hereby amended such that Section 1.59 thereof is hereby deleted and replaced in its entirety with the following new definition:

"1.50   "JAK Field" means the Hematology Field, the Oncology Field and the Graft-Versus-Host Disease Field, and includes all forms of administration except topical."

(c)     The Original Agreement is hereby amended to insert the following new definitions into ARTICLE 1 immediately after Section 1.68:

"1.68a  "Lilly" means Eli Lilly and Company, an Indiana corporation having an office at Lilly Corporate Center, Indianapolis, Indiana 46285.

1.68b   "Lilly Agreement" means the License, Development and Commercialization Agreement dated as of December 18, 2009, by and between Incyte and Lilly, as amended effective June 22, 2010, as further amended effective August 1, 2011 and as further amended effective March 31, 2016."

(d)     The Original Agreement is hereby amended to insert the following new definition into ARTICLE I immediately after Section 1.105:

"1.105a "Ruxolitinib Backup Compound" means any JAK Licensed Compound other than ruxolitinib."

2.2   Rights Granted by Incyte to Novartis. The Original Agreement is hereby amended to delete Section 2.1(b) and replace it in its entirety with the following:

"(b)    JAK License Grant; Option for Ruxolitinib Backup Compounds in GVHD.

(i)     Subject to the terms of this Agreement, Incyte hereby grants Novartis, during the Term, an exclusive (even as to Incyte and its Affiliates), royalty-bearing, non-transferable (except in accordance with Section 14.3) license, with the right to sublicense (subject to Section 2.3), under Incyte IP and Incyte's and its Affiliates' interests in Joint IP, to (i) research, Develop, Commercialize, make, have made, use, offer for sale, sell and import JAK Licensed Compounds and JAK Licensed Products in the Novartis JAK Territory in the Hematology Field and the Oncology Field (including all forms of administration except topical) and (ii) research, Develop, make and have made JAK Licensed Compounds and JAK Licensed Products in the Incyte Territory for the sole purpose of using, offering for sale and selling JAK Licensed Products in, and importing JAK Licensed Compounds and JAK Licensed Products into, the

2

Novartis JAK Territory in the Hematology Field and the Oncology Field (including all forms of administration except topical); provided however, that Novartis may not, directly or indirectly, conduct Clinical Trials or other clinical studies, including any investigator initiated studies, utilizing JAK Licensed Compounds or JAK Licensed Products in the Hematology Field or the Oncology Field in the Incyte Territory without the prior approval of the JSC.

(ii) Subject to the terms of this Agreement, Incyte hereby grants Novartis, during the Term, an exclusive (even as to Incyte and its Affiliates), royalty-bearing, non-transferable (except in accordance with Section 14.3) license, with the right to sublicense (subject to Section 2.3), under Incyte IP and Incyte's and its Affiliates' interests in Joint IP, to (i) research, Develop, Commercialize, make, have made, use, offer for sale, sell and import ruxolitinib, any Ruxolitinib Backup Compounds with respect to which Novartis has exercised a Rux Backup Compound Option (as defined below) and JAK Licensed Products in the Novartis JAK Territory in the Graft-Versus-Host Disease Field (including all forms of administration except topical) and (ii) research, Develop, make and have made ruxolitinib, such Ruxolitinib Backup Compounds and JAK Licensed Products in the Incyte Territory for the sole purpose of using, offering for sale and selling ruxolitinib, such Ruxolitinib Backup Compounds and JAK Licensed Products in, and importing ruxolitinib, such Ruxolitinib Backup Compounds and JAK Licensed Products into, the Novartis JAK Territory in the Graft-Versus-Host Disease Field (including all forms of administration except topical); provided however, that Novartis may not, directly or indirectly, conduct Clinical Trials or other clinical studies, including any investigator initiated studies, utilizing ruxolitinib, any such Ruxolitinib Backup Compounds or JAK Licensed Products in the Graft-Versus-Host Disease Field in the Incyte Territory without the prior approval of the JSC. For purposes of this Section 2.1(b)(ii), the license grant to JAK Licensed Products in the case of a JAK Licensed Product containing a Ruxolitinib Backup Compound shall be effective from and after the exercise by Novartis of the Rux Backup Compound Option with respect to such Ruxolitinib Backup Compound.

(iii) If at any time during the Term, Incyte or its Affiliates acquires (in any form of agreement or other arrangement, including a waiver under or amendment, termination or expiration of any agreement or other arrangement) Control of a Ruxolitinib Backup Compound or any rights therein in any Indication within the Graft-Versus-Host Disease Field anywhere in the world, it shall provide Novartis with prompt written notice thereof (which notice shall include a description in reasonable detail of such Ruxolitinib Backup Compound or any rights therein, as the case may be, and the circumstances under which Incyte gained Control thereof) (the "Incyte Rux Backup Compound Notice"), together with a Rux Backup Compound Information Package (as defined below). Novartis shall have the right to request and, within [REDACTED] of receipt of such request Incyte shall provide, any other information or data reasonably relevant to the Novartis' determination as to whether or not to exercise the Rux

Backup Compound Option with respect to such Ruxolitinib Backup Compound or rights therein. Novartis shall have the exclusive option (a "Rux Backup Compound Option") to acquire rights with respect to any or all of such Ruxolitinib Backup Compound or rights therein, as the case may be, in the Graft-Versus-Host Disease Field on the terms set forth in this Section 2.1(b)(iii) without any additional consideration to Incyte therefor (including any payment, grant of rights or assumption of obligations). If Novartis desires to exercise the Rux Backup Compound Option, it shall provide written notice thereof to Incyte ▌ ▌ of Novartis' receipt of all of the following: (x) the Incyte Rux Backup Compound Notice, (y) the Rux Backup Compound Information Package and (z) all information and data requested by Novartis in accordance with this section. Such notice shall include a description of the Rux Backup Compound or rights therein with respect to which Novartis is exercising the Rux Backup Compound Option. Whether or not to exercise a Rux Backup Compound Option and whether to exercise the Rux Backup Compound Option with respect to all or some of the Ruxolitinib Backup Compound or any rights therein shall be in Novartis' sole discretion. If Novartis exercises a Rux Backup Compound Option, then the license granted to Novartis pursuant to Section 2.1(b)(ii) shall, from and after such exercise, include such Ruxolitinib Backup Compound or rights therein, as the case may be, with respect to which Novartis has exercised the Rux Backup Compound Option. For clarity, Novartis' rights under this Section 2.1(b)(iii) with respect to any Ruxolitinib Backup Compound or rights therein, as the case may be, shall be unaffected by any previous exercise or failure to exercise of a Rux Backup Compound Option by Novartis. For purposes hereof, "Rux Backup Compound Information Package" means, with respect to a Ruxolitinib Backup Compound or rights therein, all material pre-clinical and clinical data, information relevant to the Intellectual Property Rights Controlled by Incyte or its Affiliates with respect to such Ruxolitinib Backup Compound or rights therein and any other information or data Controlled by Incyte or its Affiliates and reasonably relevant to the Development, Manufacture or Commercialization of such Ruxolitinib Backup Compound or rights therein in the Graft-Versus-Host Disease Field."

2.3    Non-Compete – JAK 2 Inhibitor Compounds and JAK Licensed Compounds.

(a)    The Original Agreement is hereby amended to delete Section 2.6(b)(i) and replace it in its entirety with the following:

"(i)    During the JAK Program Term, Incyte agrees not to, and shall cause its Affiliates not to, directly or indirectly, including through any ownership interest in any other entity (other than through an ownership interest of ▌ ▌) or less of a public company), Develop or Commercialize any JAK2 Inhibitor Compounds in the JAK Field anywhere in the world, other than as expressly permitted under this Agreement (including Section 4.5). Notwithstanding the foregoing, nothing in this Agreement shall prohibit Incyte or its Affiliates from Developing or Commercializing (x) any JAK Excluded Compound in any field

4

anywhere in the world or (y) baricitinib and its back-up compounds ▮▮▮▮▮, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in the Graft-Versus-Host Disease Field anywhere in the world."

(b)     The Original Agreement is hereby amended to delete Section 2.6(b)(iii) and replace it in its entirety with the following:

"(iii)  For the avoidance of doubt, neither Novartis nor its Affiliates will Develop or Commercialize any JAK Licensed Compounds anywhere in the world for the treatment of any Inflammatory Disease other than ruxolitinib and other than any Ruxolitinib Backup Compounds with respect to which Novartis has exercised a Rux Backup Compound Option in the Graft-Versus-Host Disease Field in the Novartis Territory."

2.4    Milestone Payments.

(a)    Sections 8.2(c) and (d) of the Original Agreement are each hereby amended to add the following note at the end of such Sections:

"For clarity, achievement of any milestone in an Indication in the Graft-Versus-Host Disease Field will not constitute achievement of any milestone under this Section. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"

(b)    Section 8.2 of the Original Agreement is hereby amended to insert the following immediately after Section 8.2(d):

"(d1)  Graft-Versus-Host Disease Milestones.



5



(c)     The Original Agreement is hereby amended to delete Section 8.2(f) and replace it in its entirety with the following:

> "(f)     Except as expressly otherwise specified herein, none of the payments listed in this Section 8.2, including any Graft-Versus-Host Disease Milestone Payments, shall be payable more than once, and, subject to the foregoing, each shall be payable at the first achievement of a milestone event for a Licensed Product and shall not be payable again if subsequently another Licensed Product achieves the same milestone event. For clarification, if a milestone is paid for a Licensed Compound, that milestone will not be paid again for a back-up compound. No milestone payments will be due after achievement of the third (3rd) Indication other than for (x) Major Indications or (y) to the extent not previously paid, any milestone payable pursuant to Section 8.2(d1). For purposes of clarity, a milestone payment equal to that of the third (3rd) Indication will be paid for each Major Indication beyond the third (3rd) Indication; provided, that such milestone payment shall only be payable at the first achievement of a milestone event with respect to each oncology Indication included as a Major Indication."

(d)     The Original Agreement is hereby amended to add Exhibit J at the end of the Original Agreement.  For purposes of clarity, a JAK Licensed Product containing ruxolitinib or any Ruxolitinib Backup Compounds with respect to which Novartis has exercised a Rux Backup Compound Option in an Indication in the Graft-Versus-Host Disease Field shall be deemed to be a JAK Licensed Product for all purposes, including, without limitation, Section 8.2(e)(ii) (*JAK Licensed Product Sales Milestones*) and Section 8.3(a)(ii) (*Royalties – JAK Licensed Products*).

## ARTICLE III

## PAYMENTS

3.1     Upfront Payment.  Novartis shall pay to Incyte a one-time, non-creditable, non-refundable payment of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ of an invoice therefor, which invoice may not be submitted prior to the Effective Date.

## ARTICLE IV

## REPRESENTATIONS AND WARRANTIES

4.1     Representation of Authority; Consents.  Incyte and Novartis each represents and warrants to the other Party that:

6

(a) as of the Effective Date, it has full right, power and authority to enter into this Amendment No. 4;

(b) as of the Effective Date, this Amendment No. 4 has been duly executed by such Party and constitutes a legal, valid and binding obligation of such Party, enforceable in accordance with its terms, except as enforceability may be limited by bankruptcy, fraudulent conveyance, insolvency, reorganization, moratorium and other Laws relating to or affecting creditors' rights generally and by general equitable principles and public policy constraints (including those pertaining to limitations and/or exclusions of liability, competition Laws, penalties and jurisdictional issues including conflicts of Laws); and

(c) as of the Effective Date, all necessary consents, approvals and authorizations of all government authorities and other persons (including, in the case of Incyte, Lilly) required to be obtained by such Party in connection with the execution, delivery and performance of this Amendment No. 4 have been obtained.

4.2 No Conflict. Each Party represents and warrants to the other Party that the execution and delivery of this Amendment No. 4 and the performance of such Party's obligations hereunder (a) do not conflict with or violate such Party's corporate charter and bylaws or any requirement of applicable Laws and (b) do not and shall not conflict with, violate or breach or constitute a default or require any consent under, any oral or written contractual obligation of such Party (including in the case of Incyte, the Lilly Agreement). Each Party agrees that it shall not during the term of the Original Agreement grant any right, license, consent or privilege to any Third Party (including, in the case of Incyte, to Lilly) or otherwise undertake any action, either directly or indirectly, that would conflict with the rights granted to the other Party or interfere with any obligations of such Party set forth in this Amendment No. 4.

4.3 No Ruxolitinib Backup Compounds. Incyte represents and warrants to Novartis that, as of the Effective Date, it does not Control any Ruxolitinib Backup Compounds for use in any Indication within the Graft-Versus-Host Disease Field.

ARTICLE V

INDEMNIFICATION

5.1 By Novartis.

(a) Novartis agrees, at Novartis's cost and expense, to defend, indemnify and hold harmless the Incyte Indemnified Parties from and against any losses, costs, damages, fees or expenses arising out of any Third Party claim relating to or alleging any facts that would constitute a breach by Novartis of any of its representations, warranties or obligations pursuant to this Amendment No. 4.

(b) Sections 10.1(b) and (c) of the Original Agreement shall apply *mutatis mutandis* to this Amendment No. 4 as if set forth herein in full.

5.2 By Incyte.

(a)     Incyte agrees, at Incyte's cost and expense, to defend, indemnify and hold harmless the Novartis Indemnified Parties from and against any losses, costs, damages, fees or expenses arising out of any Third Party claim relating to or alleging any facts that would constitute a breach by Incyte of any of its representations, warranties or obligations pursuant to this Amendment No. 4.

(b)     Sections 10.2(b) and (c) of the Original Agreement shall apply *mutatis mutandis* to this Amendment No. 4 as if set forth herein in full.

## ARTICLE VI

## MISCELLANEOUS

6.1     Effect on Original Agreement. Except to the extent amended pursuant to this Amendment No. 4, the Original Agreement shall continue in full force and effect in accordance with its terms.

6.2     Publicity. Except as required by judicial order or applicable Law, neither Party shall make any public announcement concerning this Amendment No. 4 without the prior written consent of the other Party, which consent shall not be unreasonably withheld or delayed. Except in the case of the initial press release announcing the execution of this Amendment 4, the Party preparing any such public announcement shall provide the other Party with a draft thereof at least ten (10) full Business Days prior to the date on which such Party would like to make the public announcement. Notwithstanding the foregoing, Incyte may issue a press release in the form attached as Schedule II within one (1) Business day after the Effective Date. Either Party shall be permitted to disclose publicly any information which was previously approved for public disclosure pursuant to this Section 6.2.

6.3     Miscellaneous Provisions. The following provisions of the Original Agreement shall apply to this Amendment No. 4 as if set forth herein in full: Section 14.1 (Governing Law); Section 14.2 (Consent to Jurisdiction); Section 14.6 (Notices); Section 14.11 (Headings); Section 14.12 (No Implied Waivers; Rights Cumulative); Section 14.13 (Severability); Section 14.14 (Execution in Counterparts); Section 14.16 (Exhibits).

[THE REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Parties have caused their duly authorized officers to execute and acknowledge this Amendment No. 4 as of the date first written above.

| NOVARTIS INTERNATIONAL PHARMACEUTICAL LTD. | INCYTE CORPORATION |
|---|---|
| By: _____ <br> Name: Michael Jones <br> Title: Director | By: _____ <br> Name: <br> Title: |

NOVARTIS INTERNATIONAL
PHARMACEUTICAL LTD.

By: _____
Name:
Title:

9

IN WITNESS WHEREOF, the Parties have caused their duly authorized officers to execute and acknowledge this Amendment No. 4 as of the date first written above.

| NOVARTIS INTERNATIONAL PHARMACEUTICAL LTD. | INCYTE CORPORATION |
|---|---|
| By: _____ <br> Name: <br> Title: | By: _____ <br> Name: <br> Title: |

NOVARTIS INTERNATIONAL
PHARMACEUTICAL LTD.

By: *[signature]*
Name: M. TONESAN AMISSAH
Title: ALTERNATE DIRECTOR

9

IN WITNESS WHEREOF, the Parties have caused their duly authorized officers to execute and acknowledge this Amendment No. 4 as of the date first written above.

| NOVARTIS INTERNATIONAL PHARMACEUTICAL LTD. | INCYTE CORPORATION |
|---|---|
| By: _____ <br> Name: <br> Title: | By: _____ <br> Name: Herve Hoppenot <br> Title: President & CEO |

NOVARTIS INTERNATIONAL
PHARMACEUTICAL LTD.

By: _____
Name:
Title:

10

**Schedule I**

**Exhibit J**

Graft-Versus-Host Disease Field (ICD-9-CM)

279.50 Graft-versus-host disease, unspecified (including prophylaxis of Graft-versus-host disease)
279.51 Acute graft-versus-host disease
279.52 Chronic graft-versus-host disease
279.53 Acute on chronic graft-versus-host disease

**Schedule II**

**Press Release**

See Attached.



**FOR IMMEDIATE RELEASE**

## Incyte Acquires Rights from Lilly to Develop and Commercialize Ruxolitinib (Jakafi®) for the Treatment of Patients with Graft-Versus-Host Disease (GVHD)

- Pivotal development program for ruxolitinib in GVHD expected to begin in 2016
- Novartis agreement amended to include development and commercialization rights for ruxolitinib in GVHD outside of the U.S.

WILMINGTON, DE – April X, 2016 – Incyte Corporation (Nasdaq: INCY) today announced it has acquired the rights to develop and commercialize ruxolitinib (Jakafi®), its proprietary JAK1/JAK2 inhibitor, for graft-versus-host disease (GVHD) from Eli Lilly and Company (NYSE: LLY). Additionally, Incyte has amended its Collaboration and License Agreement with Novartis, granting Novartis exclusive research, development and commercialization rights for ruxolitinib in GVHD outside the U.S.

"We are committed to the research and development of innovative medicines that will benefit patients with serious diseases, like GVHD, where there are no approved treatments," said Hervé Hoppenot, President and CEO, Incyte. "We are very pleased to be able to expand our development opportunities for ruxolitinib and plan to initiate a registration study in GVHD later this year as we seek to accelerate the availability of a treatment option for patients with this life-threatening disorder."

Incyte and Lilly have agreed to amend their License, Development and Commercialization Agreement to enable Incyte to independently develop and commercialize ruxolitinib for GVHD. Incyte will make an upfront payment of $XX million to Lilly. The terms of the agreement also include additional potential payments by Incyte to Lilly upon the achievement of certain regulatory milestones.

Additionally, Incyte and Novartis have agreed to amend their Collaboration and License Agreement, granting Novartis the rights to research, develop and commercialize ruxolitinib for GVHD outside the U.S. Novartis will make payments to Incyte upon the achievement of certain development and regulatory milestones.

If approved, Incyte expects to commercialize ruxolitinib for GVHD in the U.S. and under the terms of the existing Collaboration and License Agreement would be eligible to receive potential milestone payments and royalties on sales of ruxolitinib in GVHD by Novartis outside the U.S.

1

## About GVHD

Graft-versus-host disease (GVHD) is a condition that might occur after an allogeneic transplant (the transfer of genetically dissimilar stem cells or tissue). In GVHD, the donated bone marrow or peripheral blood stem cells view the recipient's body as foreign and attack the body. There are two forms of GVHD; acute and chronic. GVHD is a significant cause of morbidity and mortality in transplant recipients. The skin, gastrointestinal (digestive) tract, and liver are the most commonly affected organs in patients with GVHD.

## About Ruxolitinib (Jakafi®)

Ruxolitinib (Jakafi) is a first-in-class JAK1/JAK2 inhibitor approved by the U.S. Food and Drug Administration for treatment of people with polycythemia vera (PV) who have had an inadequate response to or are intolerant of hydroxyurea. Jakafi is also indicated for treatment of people with intermediate or high-risk myelofibrosis (MF), including primary MF, post–polycythemia vera MF, and post–essential thrombocythemia MF.

Ruxolitinib is not approved anywhere in the world as treatment for graft-versus-host disease.

Jakafi is marketed by Incyte in the United States and by Novartis as Jakavi® (ruxolitinib) outside the United States.

**Full Prescribing Information, including a more complete discussion of the risks associated with Jakafi, is available at www.jakafi.com.**

## About Incyte

Incyte Corporation is a Wilmington, Delaware-based biopharmaceutical company focused on the discovery, development and commercialization of proprietary therapeutics. For additional information, please visit www.incyte.com.

Follow @Incyte on Twitter at https://twitter.com/Incyte.

## Forward Looking Statements

Except for the historical information set forth herein, the matters set forth in this press release contain predictions, estimates and other forward-looking statements, including without limitation statements regarding: the Company's plans and expectations for its GVHD development program, including the timing of the commencement of a registration study for ruxolitinib in GVHD, whether and when the Company will make additional payments to Lilly, and whether and when the Company will receive additional payments from Novartis. These forward-looking statements are based on the Company's current expectations and subject to risks and uncertainties that may cause actual results to differ materially, including unanticipated developments in and risks related to the efficacy or safety of ruxolitinib, risks related to market competition, the results of and risks associated with further research and development, risks and uncertainties associated with sales, marketing and distribution requirements, risks that results of clinical trials may be unsuccessful or insufficient to meet applicable regulatory standards or warrant continued development, the ability to enroll sufficient numbers of subjects in clinical trials, other market, economic or strategic factors and technological advances, unanticipated delays, the ability of the Company to compete against parties with greater

Incyte #31169

financial or other resources, risks associated with the Company's dependence on its relationships with its collaboration partners, greater than expected expenses, unanticipated or unpredictable expenses relating to litigation or strategic activities, our ability to obtain additional capital when needed, risks related to obtaining effective patent coverage for our products and other risks detailed from time to time in the Company's reports filed with the Securities and Exchange Commission, including its Form 10-K for the year ended December 31, 2015. The Company disclaims any intent or obligation to update these forward-looking statements.

## Contacts

**Media**

Catalina Loveman   +1 302 498 6171

cloveman@incyte.com

**Investors**

Michael Booth, DPhil   +1 302 498 5914

mbooth@incyte.com